IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ROBERT S. HILLARD,                    )          CASE NO. 4:08CV3031
                                      )
            Plaintiff,                )
                                      )
      v.                              )              MEMORANDUM
                                      )               AND ORDER
CITY OF FAIRBURY, FAIRBURY            )
POLICE DEPARTMENT, RICK               )
CARMICHAEL, BRETT WENTZ,              )
BROOKS BRYAN, JEFFERSON               )
COUNTY, JEFFERSON COUNTY              )
SHERIFF'S DEPARTMENT, BRYAN           )
SPITZNOGLE, MATT SHULTZ,              )
                                      )
            Defendants.               )

      This matter is before the court on Defendants' Motion for Summary Judgment.

(Filing No. 72.)  For the reasons set forth below, Defendants' Motion for Summary

Judgment is granted.

## I. BACKGROUND

      Plaintiff Robert S. Hillard filed his original Complaint on February 19, 2008, against

12 defendants.  (Filing No. 1.)  The court conducted an initial review of Plaintiff's Complaint

and dismissed his claims against two Defendants.  (Filing No. 11 at CM/ECF p. 10.)  The

court also ordered Plaintiff to amend his Complaint to state a claim upon which relief could

be granted.  (Id.)  Plaintiff filed an Amended Complaint on July 22, 2008,[1] in which Plaintiff

generally alleged violations of his constitutional rights by officers of the Fairbury Police

Department and Jefferson County Sheriff's Department.  (Filing No. 17.)

---

      [1]Plaintiff's Amended Complaint is the operative complaint in this matter and
supersedes his previous complaint.

On March 12, 2009, Defendants filed a Motion to Dismiss (Filing No. 40), which the court granted in part.  (Filing No. 50 at CM/ECF p. 2.)  On February 25, 2010, Defendants filed a Motion for Summary Judgment as to Plaintiff's remaining claims.  (Filing No. 72.)  Defendants also filed a Brief in Support and an Index of Evidence.  (Filing Nos. 73 and 74.)  On April 26, 2010, Plaintiff timely filed a Brief in Opposition to Motion for Summary Judgment and an Index of Evidence.[2]  (Filing Nos. 91 and 92.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law."  NECivR 56.1(a)(1).  If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts."  NECivR 56.1(b)(1).  Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition.  *Id.*  "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response."  *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

Defendants submitted a statement of material facts in accordance with the court's Local Rules.  (Filing No. 74 at CM/ECF pp. 2-4.)  Plaintiff submitted a Brief and an Index

---

[2]Plaintiff filed a Motion to Compel Discovery on May 10, 2010 (Filing No. 95), which the court need not consider because, even if Defendants supplied the additional discovery requested by Plaintiff, it would have no impact on the court's decision.

2

of Evidence in response.  (Filing Nos. 91 and 92.)  This matter is therefore deemed fully

submitted and the court adopts the following relevant undisputed facts.

## II.  RELEVANT UNDISPUTED FACTS

Fairbury Defendants

1.    City of Fairbury ("Fairbury") is a city organized under the laws of the State of Nebraska.

2.    Fairbury Police Department ("FPD") is an agency of Fairbury.

3.    At all times relevant to this action, Rick Carmichael ("Carmichael"), Brett Wentz ("Wentz"), and Brooks Bryan ("Bryan") were agents and employees of the FPD.

4.    At all times relevant to this action, agents and employees of Fairbury were acting within the scope of their employment

5.    In July of 2006, Plaintiff called Jefferson County Law Enforcement to report missing prescription medication.

6.    Kaleb Wehling, Amber Hyman, and Maria Iniquez reported to Wentz that they witnessed Plaintiff give others prescription medication.

7.    Kaleb Wehling and Amber Hyman reported to Wentz that Plaintiff gave them prescription medication.[3]

8.    Three days after Plaintiff reported his medication missing, Wentz charged Plaintiff with false reporting and giving away his medication.

9.    Wentz witnessed Plaintiff looking into a window of Maria Iniquez's house.

10.    Wentz informed Maria Iniquez of his observation.

11.    Maria Iniquez informed Wentz that she had recently found the same window off its track and lying out of the window frame, that her cellular phone had been missing, and that Amber Hyman had returned the phone after finding it in Plaintiff's property inside Ms. Hyman's residence.

---

[3]Defendants' statement of facts sets forth that Maria Iniquez also reported to Wentz that Plaintiff gave her prescription medication.  (Filing No. 74 at CM/ECF p. 3.)  However, Wentz's Affidavit for Arrest Warrant plainly states that Hillard "tried giving pills to her," but she did not take them.  (Filing No. 73, Attach. 2, at CM/ECF p. 3.)

12.     On August 1, 2006, Wentz wrote a report accusing Plaintiff of burglary.

13.     On August 20, 2006, Bryan filed a report accusing Plaintiff of terroristic threats.

14.     On October 1, 2006, Wentz accused Plaintiff of tampering with a witness based on a statement from Myranda Platt that Plaintiff offered to reunite her with an ex-boyfriend if she refused to testify against Plaintiff.

15.     Plaintiff was in police custody when he allegedly committed the act of tampering with a witness.

Jefferson County Defendants

16.     Jefferson County is a county organized under the laws of the State of Nebraska.

17.     At all times relevant to this action, Nels Sorenson ("Sorenson"), Matt Schultz ("Schultz"),[4] and Bryan Spitznogle ("Spitznogle") were agents and employees of Jefferson County and the Jefferson County Sheriff's Department ("JCSD").

18.     At all times relevant to this action, agents and employees of the JCSD were acting within the scope of their employment.

19.     In March 2006, Ricky Hillard informed Plaintiff that the Jefferson County Attorney and Deputy County Attorney had made an agreement to "get him."

20.     On June 1, 2007, Schultz gave Plaintiff's legal papers to Plaintiff's mother.

21.     Schultz believed that Plaintiff had advised him to give his personal items to Plaintiff's mother.

22.     After the hearing, Plaintiff noticed his legal papers were missing and immediately asked Schultz to retrieve them from his mother.

23.     Schultz refused to retrieve Plaintiff's legal papers.

---

[4]Plaintiff has named "Matt Shultz" as Defendant.  It appears from Defendants' filings that this individual is actually Matt Schultz.  (Filing No. 74 at CM/ECF p. 1.)  The court will direct the Clerk of the court to update the court's records to reflect the actual name of this party.  For clarity, the court will use Defendant's actual name for purposes of this Memorandum and Order.

24.     Plaintiff's mother could not send Plaintiff's legal papers to him because of the Nebraska Department of Corrections's policy to open incoming mail to check it for contraband.

25.     Sometime during the summer of 2006, Sorenson blocked Plaintiff's ability to call emergency services from his cellular telephone because of what Sorenson believed to be Plaintiff's "continual, disruptive misuse of those services."

### III.  ANALYSIS

### A.     Standard of Review

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994).  It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).  In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, nonmoving parties must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

5

must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.     Claims Against Defendants in Their Individual Capacities**

Plaintiff brings his claims against Defendants in their individual capacities. Defendants argue that summary judgment in their favor is appropriate because they are entitled to qualified immunity.

Qualified immunity shields governmental officials sued in their individual capacities from personal liability if their actions, even if unlawful, were nevertheless objectively reasonable in light of the clearly established law at the time of the events in question. *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987). In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed. . . . The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted). Moreover, qualified immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

Qualified immunity requires a two-part inquiry: (1) whether the facts shown by the plaintiff show a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009). If no reasonable fact finder could answer yes to both

6

of these questions, the official is entitled to qualified immunity.  (*Id.*)  Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.  *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) (citing *Pearson v. Callahan,* 129 S.Ct. 808, 818 (2009)).

**1.    Wentz**

Plaintiff's argument, liberally construed, is that Wentz violated Plaintiff's Fourth Amendment rights because Wentz had no probable cause to charge and arrest Plaintiff for burglary, tampering with a witness, false reporting, and distributing a controlled substance.  (Filing No. 17 at CM/ECF pp. 5-6.)

In *Stufflebeam v. Harris*, 521 F.3d 884, 886-887 (8th Cir. 2008), the Eighth Circuit Court of Appeals reiterated its prior holding that "[a] state police officer has probable cause to arrest if the facts and circumstances within his knowledge 'are sufficient to warrant a prudent person, or one of reasonable caution, in believing ... that the suspect has committed, is committing, or is about to commit an offense' under state law.'" *Id.* (*quoting United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir.1995)).  Further, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  Thus, the court examines whether a reasonable officer would have probable cause to believe that Plaintiff had committed, burglary, tampering with a witness, distribution of a controlled substance, and false reporting.

**a.    Burglary**

7

In Nebraska, a person commits burglary if he or she "willfully, maliciously, and forcibly breaks and enters any real estate . . . with intent to steal property of any value." Neb. Rev. Stat. § 28-507.   The uncontroverted facts are, at the time Wentz arrested Plaintiff for burglary, Wentz had observed Plaintiff looking in a window of Maria Iniquez's house and was later informed by Ms. Iniquez that she had recently found the same window off its track, that her cellular telephone had been missing, and that Amber Hyman had returned her telephone after finding it with Plaintiff's property inside Ms. Hyman's residence.  (Filing No. 73, Attach. 1, at CM/ECF p. 1-3.)  Plaintiff alleges that Wentz's affidavit is false because Ms. Iniquez "testified under oath that she never made a report to Ofc. Wentz accusing" Plaintiff.  (Filing No. 92 at CM/ECF p. 3.)  However, he provides no evidentiary support for his statement and has failed to controvert Wentz's testimony in any way.

As set forth above, a law enforcement officer has probable cause to arrest if the facts and circumstances within his knowledge are sufficient to warrant a prudent person to believe that the suspect has committed an offense under state law.   *See Stufflebeam, 521 F.3d at 886-887.*   The facts known to Wentz at the time he arrested Plaintiff were sufficient to warrant a prudent person to believe that Plaintiff had willfully, maliciously, and forcibly entered Ms. Iniquez's residence and stolen her cellular telephone.  In short, a reasonable officer would have probable cause to believe that Plaintiff had committed burglary.

### b.    Tampering with a Witness

Nebraska Revised Statutes Section 28-919(1) provides as follows:

8

(1) A person commits the offense of tampering with a witness or informant if, believing that an official proceeding or investigation of a criminal or civil matter is pending or about to be instituted, he or she attempts to induce or otherwise cause a witness or informant to:

(a) Testify or inform falsely;
(b) Withhold any testimony, information, document, or thing;
(c) Elude legal process summoning him or her to testify or supply evidence; or
(d) Absent himself or herself from any proceeding or investigation to which he or she has been legally summoned.

Neb. Rev. Stat. § 28-919.

The undisputed facts are that Myranda Platt informed Wentz that Plaintiff offered to reunite her with an ex-boyfriend if she refused to testify against Plaintiff in a criminal case in which Ms. Platt was a witness.  (Filing No. 74 at CM/ECF p. 4; Filing No. 91 at CM/ECF p. 3.)  Plaintiff argues that Wentz should have known that Platt's statement was false because Plaintiff was in police custody at the time he allegedly contacted Ms. Platt. (Filing No. 91 at CM/ECF p. 10.)  However, the relevant inquiry for qualified immunity purposes is not whether Ms. Platt's statement was true or false, but whether the facts and circumstances known to Wentz were sufficient to warrant a reasonable person to believe that Plaintiff had committed the act of tampering with a witness.  *See Stufflebeam*, 521 F.3d at 886 -887.  Based on Ms. Platt's voluntary statement, which Plaintiff offered as evidence in this matter (Filing No. 92 at CM/ECF p. 28), a reasonable officer would have probable cause to believe that Plaintiff had committed the act of tampering with a witness.

### c.    Distributing a Controlled Substance and False Reporting

Nebraska Revised Statutes Section 28-416(1) provides that it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance."

9

In addition, Nebraska Revised Statutes Section 28-907(1)(a) provides that a person commits false reporting if he or she "furnishes material information he or she knows to be false to any peace officer or other official with the intent to instigate an investigation of an alleged criminal matter or to impede the investigation of an actual criminal matter."

It is undisputed that Plaintiff reported to Wentz that a bottle of his prescription medication was missing.  (Filing No. 73, Attach. 2, at CM/ECF p. 1; Filing No. 91 at CM/ECF pp. 2-4.)  It is also undisputed that at least three individuals—Kaleb Wehling, Amber Hyman, and Maria Iniquez—reported to Wentz that they witnessed Plaintiff give others prescription medication, and two of them—Kaleb Wehling and Amber Hyman—reported that Plaintiff gave them prescription medication.  (Filing No. 73, Attach. 2, at CM/ECF pp. 1-3; Filing No. 91 at CM/ECF p. 2.)  Although Plaintiff claims that Wentz coerced Amber Hyman into making her statement and used Wehling to "set plaintiff up and send plaintiff to prison," Plaintiff provides no evidentiary support for his allegations.  Based on the statements by Mr. Wehling, Ms. Hyman, and Ms Iniquez, Wentz had ample evidence to support his belief that Plaintiff had distributed his prescription medication to others and filed a false report.

As set forth above, a reasonable officer would have probable cause to believe that Plaintiff had committed burglary, tampering with a witness, distribution of a controlled substance, and false reporting.  Thus, Wentz did not violate Plaintiff's clearly established Fourth Amendment rights when he arrested Plaintiff on these charges.  Because Plaintiff has not established that Wentz violated a constitutional right, there is no need to proceed with the second part of the qualified immunity analysis.  See *Akins*, 588 F.3d at 1183.

10

Accordingly, Wentz is entitled to qualified immunity as to Plaintiff's claims against him in his individual capacity.

### 2.   Bryan

Plaintiff's claims against Bryan are difficult to discern.  As best the court can tell, Plaintiff alleges that Bryan violated a criminal statute, Nebraska Revised Statutes Section 28-386, knowingly and intentionally abusing a vulnerable adult, when Bryan charged and arrested Plaintiff for terroristic threats.  (Filing No. 91 at CM/ECF pp. 10-11.)

A private plaintiff cannot force a criminal prosecution because the authority to initiate a criminal complaint rests exclusively with state and federal prosecutors.  *See Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996); *see also Parkhurst v. Tabor*, 569 F.3d 861, 867 (8th Cir. 2009) (quoting *United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.")).  In short, the court does not have the authority to initiate a criminal prosecution against Bryan.  The claims against Bryan are therefore dismissed.

### 3.   Schultz

Plaintiff alleges that Schultz violated Plaintiff's constitutional right of access to the courts, including the denial of access to counsel, when he gave Plaintiff's legal papers to Plaintiff's mother.  (Filing No. 17 at CM/ECF pp. 8-9.)

In *Goff v. Nix*, 113 F.3d 887, 892 (8th Cir. 1997), the Eighth Circuit Court of Appeals concluded that "[t]he taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts."  *Id.*  Further, "the destruction or

11

withholding of inmates' legal papers burdens a constitutional right, and can only be justified if it is reasonably related to a legitimate penological interest." *Id.*  In order to sustain a claim based on the denial of access to legal materials, counsel, or the courts, Plaintiff must show that he suffered an actual injury as a result of the alleged denial of access. *Klinger v. Department of Corr.*, 107 F.3d 609, 616-17 (8th Cir. 1997).  An actual injury occurs when the prisoner is prevented from or has lost the opportunity to pursue a "nonfrivolous" and "arguable" claim. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Some of the basic facts with regard to this claim are in dispute.  Viewing the facts in the light most favorable to Plaintiff, on June 1, 2007, Schultz and another officer drove Plaintiff to a court hearing in Fairbury, Nebraska. (Filing No. 73, Attach. 5, at CM/ECF p. 1.)  While Plaintiff was in his hearing, Schultz removed Plaintiff's legal papers from the transport van and gave them to Plaintiff's mother, without Plaintiff's permission. (*Id.*; Filing No. 91 at CM/ECF p. 3.)  After the hearing, Plaintiff noticed his legal papers were missing and immediately asked Schultz to retrieve them from his mother, who Plaintiff could see loading his property into her vehicle. (Filing No. 92 at CM/ECF p. 46.)  Schultz refused to retrieve Plaintiff's papers, instead forcing Plaintiff into the transport van and stating "sue me." (*Id.*)  Without these legal papers, Plaintiff was unable to review various documents in preparation for his criminal trial. (Filing No. 91 at CM/ECF p. 18.) Specifically, Plaintiff was unable to review correspondence sent to him by his attorney that contained evidence of Plaintiff's innocence, and also evidence that the prosecutor intentionally withheld, lost, or destroyed exculpatory evidence. (*Id.* at CM/ECF p. 17.)  As a result, Plaintiff was unable to "assist his attorney in his defense." (*Id.* at CM/ECF p. 18.)

12

At this stage of the proceedings, taking the facts in the light most favorable to Plaintiff, the question of whether Schultz is entitled to qualified immunity is a difficult one. Thus, the court will bypass the qualified immunity issue and proceed to the merits of Plaintiff's claim, where it is clear that Plaintiff is not entitled to recovery. As set forth above, in order to sustain a claim based on the denial of access to legal materials, counsel, or the courts, Plaintiff must show that he suffered an actual injury as a result of the alleged denial of access. *See Klinger*, 107 F.3d at 616-17. Here, Plaintiff has not shown that he suffered a cognizable injury sufficient to afford him standing to seek relief. Plaintiff has alleged only that the taking of his legal papers rendered him unable to assist his attorney at trial, but not that he was in any way prevented from pursuing a "nonfrivolous" and "arguable" claim. *See Christopher*, 536 U.S. at 415. Separately, it is clear that the taking of Plaintiff's legal papers did not deprive Plaintiff of a defense in his criminal case, as Plaintiff plainly states that he was represented by counsel. (Filing No. 91 at CM/ECF p. 18.) In short, Plaintiff fails to raise a triable issue as to whether he suffered any actual injury as a result of Schultz's taking of his legal papers and therefore cannot sustain a claim based on the denial of access to legal materials, counsel, or the courts. *See Klinger*, 107 F.3d at 616-617. Accordingly, the claims against Schultz are dismissed.

### 4.   Spitznogle

Plaintiff has named Spitznogle as a Defendant in this matter. In his Sixth Affidavit, Plaintiff generally asserts that Spitznogle "wrongfully" arrested him. (Filing No. 92 at CM/ECF pp. 57-60.) However, Plaintiff raises no allegations against Spitznogle in his Amended Complaint or in his Brief in opposition to Defendants' Motion for Summary

Judgment.  While pro se pleadings are to be liberally construed, Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short plain statement of the claim showing that the pleader is entitled to relief."  Further, "even a pro se complaint must outline all of the elements of the claim and 'is subject to dismissal if the pleading fails reasonably to inform the adverse party of the asserted cause of action.'" *Delgado v. Fed. Bureau of Prisons*, 727 F.Supp. 24, 27 (D.D.C.1989) (quoting *Brown v. Califano*, 75 F.R.D. 497, 499 (D.D.C.1977)).  Because Plaintiff failed to provide Spitznogle notice of the asserted cause of action against him, Spitznogle is dismissed from this action.

### 5.    Carmichael and Sorenson

Plaintiff alleges that Carmichael and Sorenson failed to "properly train[,] hire, supervise, and control the officers, resulting in false arrest, ass[a]ult, battery, and routine violations of civil rights."  (Filing No. 17 at CM/ECF p. 2.)  Additionally, Plaintiff alleges that Sorenson blocked Plaintiff's ability to call emergency services from his cellular telephone in violation of constitutional law.  (Filing No. 91 at CM/ECF 10-11.)

In a § 1983 case, an official "is only liable for his . . . own misconduct" and is not "accountable for the misdeeds of [his] agents" under a theory such as respondeat superior or supervisor liability."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Rather, a supervisor can be liable for a subordinate's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the subordinate caused deprivation.  *Otey v. Marshall*, 121 F.3d 1150 (8th Cir. 1997).  As set forth above, the court finds that none of Plaintiff's constitutional rights were violated.  As

14

such, the court need not address Plaintiff's failure-to-train allegations against Carmichael and Sorenson because there was simply no "constitutional violation" in which they may have directly participated.

The court now turns to Plaintiff's claim that Sorenson blocked Plaintiff's ability to call emergency services from his cellular telephone in violation of constitutional law.  Plaintiff alleges that during the summer of 2006, Sorenson blocked Plaintiff's ability to call emergency services from his cellular telephone without notice or cause.  (Filing No. 17 at CM/ECF p. 6; Filing No. 92 at CM/ECF pp. 73-74.)  Plaintiff also alleges that, because he was unable to call emergency services from his cellular telephone, he was forced to drive his paralyzed brother to the hospital during an emergency and was subsequently arrested for driving under suspension.  (Filing No. 92 at CM/ECF pp. 73-74.)  In his Affidavit, Sorenson states that he blocked Plaintiff's ability to call emergency services because of Plaintiff's "continual, disruptive misuse of those services."  (Filing No. 73, Attach. 7, at CM/ECF p. 2.)

As set forth above, qualified immunity requires a two-part inquiry.  *Nance*, 586 F.3d 604 at 609.  Here, the second part of this two-part inquiry is straightforward so the court will bypass the more difficult question of whether Sorenson violated Plaintiff's constitutional or statutory rights.  *See Pearson*, 129 S.Ct. at 808 ("There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.")  Under the second part of the qualified immunity analysis, the court examines whether Plaintiff's ability to call emergency services from his cellular telephone was a clearly established right.

15

A constitutional right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Omni Behavioral Health v. Miller*, 285 F.3d 646, 653 (8th Cir. 2002) (internal citations and quotations omitted). However, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* "[I]n the absence of binding precedent, a court should look to all available decisional law, including decisions of state courts, other circuits and district courts." *Norfleet By and Through Norfleet v. Arkansas Dept. of Human Servs.*, 989 F.2d 289 (8th Cir. 1993).

The parties have not cited any cases involving facts similar to those presented here. Additionally, the court is unaware of any decisions in which any court in this circuit or otherwise has held that an individual's ability to call emergency services from his or her cellular telephone is a clearly established right. Notably, numerous other circuits have held that states have no constitutional obligation to provide rescue services. *Brown v. Commonwealth of Pennsylvania Dept. of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d. Cir. 2003); *Salazar v. City of Chicago*, 940 F.2d 233, 237 (7th Cir. 1991); and *Bradberry v. Pinellas County*, 789 F.2d 1513, 1517 (11th Cir. 1986). It follows then that a reasonable official would not understand that blocking someone's ability to call emergency services from his cellular telephone is a violation of a clearly established right. In short, Plaintiff has failed to demonstrate that a reasonable law enforcement officer in Sorenson's position would have known that blocking Plaintiff's ability to call emergency

16

services from his cellular telephone violated a clearly established constitutional right. Because Plaintiff has not shown that the ability to call emergency services from his cellular telephone is a clearly established right, there is no need to determine whether Sorenson violated that right.  Accordingly, Sorenson is entitled to qualified immunity as to Plaintiff's claims against him in his individual capacity.

**C.     Claims for Injunctive Relief**

Qualified immunity does not foreclose a plaintiff's request for injunctive relief. Plaintiff requests that the court enjoin Defendants from "further acts depriving Plaintiff of his civil rights and subjecting him to ass[a]ult, false arrest and malicious prosecution." (Filing No. 17 at CM/ECF p. 10.)   However, "[b]road language in an injunction that essentially requires a party to obey the law in the future is not encouraged and may be struck from an order for injunctive relief, for it is basic to the intent of Rule 65(d) that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 444 (1974)*.  Thus the court cannot and will not issue an injunction requiring Defendants to do nothing more than "obey the law."  Plaintiff's request for injunctive relief is inappropriate and Defendants are entitled to summary judgment on Plaintiff's claims for injunctive relief.

**D.     Claims Against Defendants in their Official Capacities**

Plaintiff also sued defendants in their official capacities.  However, a claim against a public employee in his or her official capacity is actually a suit against the public employer. *Kentucky v. Graham, 473 U.S. 159, 165 (1985)*; *Eagle v. Morgan, 88 F.3d 620,*

17

629 n. 5 (8th Cir. 1996) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").  Therefore, Plaintiff's claims against Defendants Carmichael, Wentz, Bryan, Sorenson, Spitznogle, and Schultz in their official capacities are actually claims against Fairbury and Jefferson County, and the court addresses them as such.

A municipality may only be liable under section 1983 if its "policy" or "custom" caused a violation of the plaintiff's constitutional rights.  *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy.  *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir.1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

To establish the existence of a governmental custom, a plaintiff must prove:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.  In short, a plaintiff must show that there was a constitutional injury and that the injury was caused by a policy or custom of the defendants.

Even if Plaintiff could establish that his constitutional rights were violated, which the court takes as true only for the purposes of this analysis,[5] Plaintiff has presented no evidence that the municipal defendants had an official policy or custom which led to that violation.  He presents only his own conclusory statement that Jefferson County and Fairbury "engaged in a policy and practice of inadequate screening for suitability of employment, training and supervision of police officers and Sheriff's deput[ies]." (Filing No. 17 at CM/ECF p. 4.)  In short, Plaintiff has shown no policy, custom, or practice in Jefferson County or Fairbury that permitted or required Defendants to violate Plaintiff's constitutional rights.  Therefore, summary judgment in favor of Defendants in their official capacities is warranted.

## E.    Claims Against Municipal Defendants

Plaintiff also names Fairbury, the FPD, Jefferson County, and the JCSD as Defendants.  As set forth above, Plaintiff has presented no evidence that any of the municipal defendants had an official policy or custom which led to any constitutional violation. In other words, Plaintiff has shown no policy, custom, or practice in Jefferson County that permitted or required Defendants to violate Plaintiff's constitutional rights.  The court need not repeat its analysis and instead finds that, for the same reasons set forth above regarding the claims against Jefferson County and Fairbury, the court grants summary judgment in favor of the FPD and the JCSD.

## F.    Conspiracy Claims

---

[5]As set forth above, Plaintiff has not established that any of his constitutional rights were violated.

19

Plaintiff alleges that "county officials" conspired to deprive him of a constitutional right.  (Filing No. 17 at CM/ECF p. 5.)  To establish a conspiracy claim Plaintiff must show that a defendant conspired with others to deprive plaintiff of his constitutional rights, that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy, and that the overt act injured the plaintiff.  *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999).

Here, Plaintiff merely alleges that someone informed him that the deputy county attorney and county attorney made an agreement "to get him."  (Filing No. 17 at CM/ECF p. 5.)  Other than this unsubstantiated allegation, Plaintiff provides no factual basis for the existence of a conspiracy.   Further, neither the Jefferson County Attorney or Deputy County Attorney are defendants in this matter, as the court already determined that they were entitled to absolute prosecutorial immunity.  (Filing No. 11 at CM/ECF p. 9.)  There is no genuine issue of material fact to suggest that any defendant conspired to deprive Plaintiff of a constitutional right.  Accordingly, summary judgment in favor of Defendants as to Plaintiff's conspiracy claims is warranted.

**G.    State-Law Claims**

Because the court has now dismissed all of Plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3).  Consequently, Plaintiff's Amended Complaint is dismissed in its entirety, but the court will dismiss the state-law claims without prejudice.

IT IS THEREFORE ORDERED that:

1.    Defendants' Motion for Summary Judgment (Filing No. 72) is granted;

20

2.      Plaintiff's federal claims against Fairbury, the FPD, Carmichael, Wentz, Bryan, Jefferson County, the JCSD, Spitznogle, and Schultz are dismissed with prejudice.   Plaintiff's state-law claims against Fairbury, the FPD, Carmichael, Wentz, Bryan, Jefferson County, the JCSD, Spitznogle, and Schultz  are dismissed without prejudice;

3.      Plaintiff's claims against the Defendants Linda Bauer and Timothy Noerrlinger are dismissed in accordance with the court's June 17, 2008, Memorandum and Order (Filing No. 11);

4.      A separate judgment will be entered in accordance with this Memorandum and Order;

5.      All other pending Motions are denied as moot; and

6.      The Clerk of the court is directed to update the court's records in this matter to reflect the actual name of Defendant Schultz.  Defendant Matt Shultz is actually Matt Schultz.

DATED this 23rd day of July, 2010.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.